UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

FOREST CREEK TOWNHOMES, LLC,          )
                                      )
    Plaintiff,                  )
                                      )
                                      ) No. 2:15-cv-02577-JPM-tmp
v.                                    )
                                      )
CARROLL PROPERTY MANAGEMENT, LLC      )
and HEDIGER ENTERPRISES, INC.,        )
                                      )
    Defendants.                 )

---

ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS;
DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND; AND DENYING
PLAINTIFF'S REQUEST FOR PERMISSIVE JOINDER

---

Before the Court is Defendants Carroll Property Management, LLC ("Carroll") and Hediger Enterprises, Inc.'s ("Hediger") Motion for Judgment on the Pleadings, filed September 9, 2015 (ECF No. 6), converted in part to a motion for summary judgment by this Court's Order on January 25, 2016 (ECF No. 36). Also before the Court is the remainder of Plaintiff Forest Creek Townhomes, LLC's ("Forest Creek") Motion for Leave to Amend, which pertains to the breach of contract claim and the addition of a defendant, filed December 2, 2015. (ECF No. 28.)

For the reasons stated below, Plaintiff's Motion for Leave to Amend as to the breach of contract claim and the addition of

Carroll Management Group, LLC d/b/a Carroll Organization, Inc.,

and Carroll Management Group, Inc., is DENIED.  Defendants'

Motion for Judgment on the Pleadings, converted into a motion

for summary judgment as to the breach of contract claim, is

GRANTED.  Plaintiff's request to permissively join Barry Cohen,

raised in supplemental briefing following the Court's January

25, 2016 Order, is also DENIED.

## I.   BACKGROUND

### A.   Factual Background

This case concerns allegations that Defendants breached a

property management agreement relating to the Highland Creek

Apartments located at 1305 Turkey Run Lane in Memphis, Tennessee

("the Property"). (Proposed Second Am. Compl. ¶¶ 5, 22-25, 27-

28, ECF No. 28-1.)[1]  On July 10, 2007, MPI Coventry Village, LLC

("MPI Coventry"), then-owner of the Property, contracted with

Miles Properties, Inc. ("Miles") for property management

services.  (ECF No. 43-1.)  This contract contained a provision

that prohibited the assignment of the contract without prior

written approval from the other party.  (Id. ¶ 15.)

In May 2010, Defendant Carroll purchased Defendant Hediger.

(Greenway Decl. ¶ 2, ECF No. 38-1.)  Also in 2010, Miles filed

for bankruptcy protection and sought to transfer its interest in

---

[1] Plaintiff's Amended Complaint and proposed Second Amended Complaint
also raise a claim of negligent misrepresentation.  (See ECF No. 1-2 at
PageID 44-45; ECF No. 28-1 ¶¶ 30-36.)  This claim was dismissed on January
25, 2016.  (ECF No. 36 at 8-11.)

certain property management contracts, including the Management
Agreement, to Hediger. (<u>Id.</u> ¶ 6.) On September 17, 2010, the
U.S. Bankruptcy Court for the Northern District of Georgia
approved this transfer and held that the non-objecting counter-
parties to the management agreements, including MPI Coventry,
were "deemed to have consented to the sale pursuant to
§393(f)(2) of the Bankruptcy Code." (<u>See</u> ECF No. 38-2 at PageID
500.)

On January 27, 2011, Barry Cohen visited the Property in
connection with a potential purchase of the Property and was
allegedly incorrectly informed by Defendants' employees that the
Property did not contain any mold. (<u>See</u> ECF No. 43-3; Cohen
Aff. ¶ 2, ECF No. 43-2.) On September 16, 2011, Highland Creek
Acquisition, LLC ("Highland Creek") was formed to purchase the
Property. (ECF No. 29-1 at PageID 407.)

On September 27, 2011, Highland Creek purchased the
Property. (Cohen Aff. ¶ 5.) Lloyd's Acceptance Corp.
("Lloyd's"), of which Cohen is president, loaned funds to
Highland Creek for the purchase of the Property and held a first
mortgage against the Property in connection with said loan.
(Cohen Aff. ¶ 6.) Also on September 27, 2011, MPI Coventry and
Highland Creek executed a "Quitclaim Assignment and Assumption
Agreement." (ECF No. 43-4; Cohen Aff. ¶ 5.) This agreement
provided Highland Creek with MPI Coventry's "right, title and

interest (if any) in and to all . . . Service Contracts . . . to the extent the same are assignable." (ECF No. 43-4 at PageID 582.) Sherri A. Pellegren signed this agreement on behalf of Highland Creek as its sole member. (Id. at PageID 584.)

The Management Agreement was terminated by Defendants effective September 28, 2011. (ECF No. 43 at 13; ECF No. 43-15.) On or about October 4, 2011, Defendants sent a new proposed agreement to provide property management services to the Property. (Cohen Aff. ¶ 8.) Around the same time, Cohen (apparently in his capacity as mortgagee) requested that Defendants provide property management services on a monthly basis. (Cohen Aff. ¶ 9.) According to Cohen, Defendants did not respond to his request and, instead, sent a letter on October 28, 2011, stating that they would no longer be providing property management services for the Property. (Cohen Aff. ¶ 10; see ECF No. 43-15.)

On or about November 25, 2011, Lloyd's foreclosed against Highland Creek and was the highest bidder at the foreclosure sale. (Cohen Aff. ¶ 7.) Lloyd's and Forest Creek executed an "Assignment of Memorandum of Bid," whereby Lloyd's bid on the Property was assigned to Forest Creek. (ECF No. 43-7 at PageID 590; Cohen Aff. ¶ 7.) On November 28, 2011, Forest Creek was organized as an LLC, with Warren H. Ashmann as the sole member. (See ECF No. 43-9.) Lloyd's transferred the Property to Forest

Creek on or about November 29, 2011.  (ECF No. 43-8; Cohen Aff. ¶ 7.)

Highland Creek was administratively dissolved on August 9, 2012.  (ECF No. 29-1 at PageID 407.)

On or about May 7, 2014, an Absolute Assignment was executed by Highland Creek, Lloyd's, and Forest Creek.  (ECF No. 43-10.)  In this contract, Highland Creek and Lloyd's assigned Forest Creek the "right, title and interest in and to all personal property owned by either of [Highland Creek or Lloyd's] and related to the Property including, without limitation, all contract rights."  (Id. at 2.)

On January 1, 2015, Ashmann assigned his 100% membership interest in Forest Creek to Cohen.  (ECF No. 43-11.)

**B.   Procedural Background**

Plaintiff filed a Complaint in the Chancery Court of Tennessee for the Thirtieth Judicial District at Memphis on October 22, 2014.  (ECF No. 1-2 at PageID 13-18.)  In its Amended Complaint filed in the same court on February 5, 2015, Plaintiff alleges that Defendants breached an asset management agreement and negligently misrepresented facts relating to an apartment complex located at 1305 Turkey Run Lane, Memphis, Tennessee.  (Am. Compl. ¶¶ 6, 16-25, ECF No. 1-2 at PageID 41-46.)  Defendants removed this action to federal court on September 2, 2015.  (Notice of Removal, ECF No. 1.)  On

September 28, 2015, Plaintiff filed a Motion to Remand (ECF No. 12), which the Court denied on October 29, 2015 (ECF No. 23).

On September 9, 2015, Defendants filed a Motion for Judgment on the Pleadings, arguing that Plaintiff does not have standing to assert its breach of contract claim and that Plaintiff has failed to adequately plead negligent misrepresentation. (ECF No. 6.) On December 2, 2015, Plaintiff filed a Response in Opposition to Defendants' Motion for Judgment on the Pleadings. (ECF No. 27.)[2] Defendants filed a reply brief on December 15, 2015. (ECF No. 29.) The Court held a hearing on this motion on December 17, 2015. (Min. Entry, ECF No. 31.) With leave of Court, Plaintiff filed a sur-reply on December 31, 2015. (ECF No. 35.)

On December 2, 2015, Plaintiff filed a Motion for Leave to Amend its Complaint to allege more specific factual bases for its claims and to add Carroll Management Group, LLC d/b/a Carroll Organization, Inc. and Carroll Management Group, Inc. as an additional defendant. (ECF No. 28.) Defendants responded in opposition on December 16, 2015. (ECF No. 30.)

On January 25, 2016, the Court entered an Order in which it granted in part Defendants' Motion for Judgment on the Pleadings

---

[2] At the Scheduling Conference held on October 8, 2015, the Court stayed briefing on the Motion for Judgment on the Pleadings until the Motion to Remand was resolved. When the Court denied Plaintiff's Motion to Remand on October 29, 2015, the Court instructed Plaintiff to respond to the Motion for Judgment on the Pleadings. (See ECF No. 23 at 6.)

as to the negligent misrepresentation claim and converted the
remainder of the Motion into a motion for summary judgment so
that the Court could look outside the pleadings to resolve the
standing issue.  (ECF No. 36.)  In the same Order, the Court
denied Plaintiff's Motion to Amend as to the negligent
misrepresentation claim and took the remainder of Plaintiff's
Motion to Amend under advisement.  (<u>Id.</u> at 10-11.)  The Court
also granted the parties additional time to brief the issues for
summary judgment.  (<u>Id.</u> at 11.)

On February 8, 2016, Plaintiff filed a Brief in Response to
Order on Motion for Judgment on the Pleadings and Request for
Permissive Joinder of Additional Parties.  (ECF No. 37.)  On the
same day, Defendants filed a Supplemental Memorandum of Law in
Support of Defendants' Motion for Summary Judgment.  (ECF No.
38.)  Defendants responded in opposition to Plaintiff's request
for permissive joinder on February 15, 2016.  (ECF No. 41.)
With leave of Court, Plaintiff filed a Response to Defendants'
Supplemental Memorandum of Law in Support of Motion for Summary
Judgment on February 25, 2016.  (ECF No. 43.)

## II.  LEGAL STANDARD

A party is entitled to summary judgment if "the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56.  "The moving party bears the initial burden

of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)); see also Kalich v. AT & T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

Summary judgment is appropriate where a party lacks standing to pursue a claim. See, e.g., Michles v. Med. College of Ohio at Toledo, 107 F.3d 871, 1997 WL 76184, at *1 (6th Cir. 1997) (unpublished table decision) (affirming grant of summary judgment where plaintiff lacked standing to bring suit). "Standing is 'the threshold question in every federal case.'" Coyne v. Am. Tobacco Co., 183 F.3d 488, 494 (6th Cir. 1999) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). "'The

party invoking federal jurisdiction bears the burden of
establishing' standing—and, at the summary judgment stage, such
a party 'can no longer rest on . . . "mere allegations," but
must "set forth" by affidavit or other evidence "specific
facts."'" Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1148-
49 (2013) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561
(1992)).

Article III of the United States Constitution limits the
jurisdiction of federal courts to actual "cases" and
"controversies." U.S. Const. art. III, § 2; Lewis v. Cont'l
Bank Corp., 494 U.S. 472, 477 (1990). "To satisfy Article III's
standing requirement, a plaintiff must have suffered some actual
or threatened injury due to the alleged illegal conduct of the
defendant; the injury must be 'fairly traceable' to the
challenged action; and there must be a substantial likelihood
that the relief requested will redress or prevent the
plaintiff's injury." Coyne, 183 F.3d at 494; see Lujan, 504
U.S. at 560. These three factors constitute "the irreducible
constitutional minimum of standing," Lujan, 504 U.S. at 560, and
are requisites for all actions, see O'Shea v. Littleton, 414
U.S. 488, 494 (1974).

When alleging an injury-in-fact, the first element of
constitutional standing, "[a]bstract injury is not enough."
O'Shea, 414 U.S. at 494. The plaintiff must show that he "has

suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." ACLU of Ohio, Inc. v. Taft, 385 F.3d 641, 645 (6th Cir. 2004) (internal quotation marks omitted).  This injury-in-fact requirement must be met before a federal court may assume jurisdiction to ensure that "a 'personal stake in the outcome' . . . [is present] to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult [issues].'" O'Shea, 414 U.S. at 493–94 (quoting Baker v. Carr, 369 U.S. 186, 2014 (1962)).

In ruling on a motion for judgment on the pleadings, if the Court considers any evidence outside the pleadings, even to resolve a jurisdictional question, the court's "failure to exclude presented outside evidence" automatically converts a Rule 12(c) motion into a motion for summary judgment.  Max Arnold & Sons, LLC v. W.L. Hailey & Co., 452 F.3d 494, 503 (6th Cir. 2006); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  At the summary judgment stage, "[t]he court . . . may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3). "Credibility determinations, the weighing of the evidence, and

the drawing of legitimate inferences from the facts" are not,
however, appropriate for summary judgment. Martinez, 703 F.3d
at 914 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
255 (1986)).

## III. ANALYSIS

### A. Assignment of Contract

Defendants argue that they are entitled to judgment as a
matter of law because Plaintiff is not a party to the Management
Agreement and, therefore, lacks standing to bring the breach of
contract claim. (ECF No. 6-1 at 4-5.) Specifically, Defendants
argue that the Management Agreement was not assigned from MPI
Coventry to Highland Creek because (1) it was a personal
services contract, (2) it was executory, and (3) the purported
assignment would materially reduce the value of the contract.
(ECF No. 38 at 6-7, 9-13.) Defendants also argue that the
Management Agreement was not assigned from Highland Creek to
Forest Creek because, at the time of the alleged assignment,
Highland Creek had been administratively dissolved and could
only take actions necessary to wind up its business. (Id. at 7-
9.)

Plaintiff asserts that it is a party to the Management
Agreement (ECF No. 27 at 6-9) and seeks leave to amend its
Complaint "to clarify its position as assignor [sic] of the
rights of MPI Coventry, LLC" (ECF No. 28-2 at 2). Plaintiff

argues that the Management Agreement was not executory or a personal services contract, and that the assignment did not result in a material reduction in value of the Agreement. (ECF No. 35 at 7-14.) Additionally, Plaintiff argues that "the administrative dissolution of Highland Creek had no impact or effect on the validity of the Absolute Assignment" because the execution of the Absolute Assignment was an act necessary to wind up its business. (Id. at 7-8.)

The Management Agreement at issue in this matter provides that it is governed by Georgia law. (Management Agreement § 17(e), ECF No. 27-1 at PageID 313.) Under Georgia law, "[i]t is axiomatic that one who is not a party to a contract has no standing to enforce the contract unless [he] is an intended third-party beneficiary thereof." Anderson v. Houser, 523 S.E.2d 342, 348 (Ga. Ct. App. 1999); see also Ga. Code Ann. § 9-2-20.

Georgia law also provides that "all choses in action arising upon contract may be assigned so as to vest the title in the assignee." Ga. Code Ann. § 44-12-22. Thus, even if a contract contains a non-assignment clause, "once a party to the contract performs its obligations thereunder so that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent." Mail Concepts, Inc. v. Foote & Davies,

Inc., 409 S.E.2d 567, 570 (Ga. Ct. App. 1991) (citing Cowart v. Singletary, 79 S.E. 196 (Ga. 1913)).  Georgia courts uphold non-assignment provisions, however, when (1) the contract is "for personal services requiring skill, science, or peculiar qualifications," Albracht v. Hamilton State Bank (In re Albracht), 505 B.R. 347, 356 (Bankr. N.D. Ga. 2013) (quoting Cowart, 79 S.E. at 201); (2) the non-assignment clause "was inserted to protect a party from a material reduction in the value of the contract," Singer Asset Fin. Co. v. CGU Life Ins. Co. of Am., 567 S.E.2d 9, 10 (Ga. 2002); or (3) the contract is still executory, Albracht, 505 B.R. at 357.

## 1.    Applicability of the Personal Services Contract Exception

The Management Agreement falls under the exemption for personal services contracts.  "A personal services contract is 'one in which the offeree is vested with discretion in accomplishing the assigned tasks because his skills, knowledge, experience and expertise are unique to the area and could not be duplicated by others not similarly qualified.'"  In re Terry, 245 B.R. 422, 426 n.10 (Bankr. N.D. Ga. 2000) (quoting Yellow Cab of Cleveland, Inc. v. Greater Cleveland Reg'l Transit Auth., 595 N.E.2d 508, 511 (Ohio Ct. App. 1991)).  The Management Agreement explicitly notes that "Manager is experienced in the business of managing multifamily apartment complexes such as the

Premises." (ECF No. 43-1 at PageID 566.) The Agreement further provides that "Manager shall manage, operate and maintain the Premises and carry out any rehabilitation activities in a commercially reasonable manner." (Id. ¶ 2(a).) Aside from the requirement that the property manager act in a commercially reasonably manner, the property manager was given significant discretion in how to manage the Property. For example, the contract gave the property manager discretion to contract for repairs and capital improvements; execute leases and collect rents; hire, discharge, and supervise employees; and perform other management activities within the budget proposed by the property manager and approved by the property owner. (Id. ¶¶ 3-4.) The property manager was also provided "such other general authority and powers as may be necessary or advisable to perform its obligations under [the] Agreement." (Id. ¶ 6.) Managing an apartment complex requires skill and experience and, while there may be other property management companies that can provide similar services, such services "could not be duplicated by others not similarly qualified." Terry, 245 B.R. at 426 n.10. Because the contract vested Defendants[3] with discretion to manage the property, and because property management requires unique skill and experience, the Management Agreement satisfies the

_____

[3] Although Defendants are not signatories to the Management Agreement, they were lawful assignees pursuant to the Order of the U.S. Bankruptcy Court for the Northern District of Georgia. (See ECF No. 38-2 at PageID 500.)

definition of a personal services contract.  Accordingly, it could not be assigned under Georgia law.  This finding alone is sufficient to determine that the purported assignment from MPI Coventry to Highland Creek, and from Lloyd's and Highland Creek to Forest Creek, did not validly assign the right to sue under the Management Agreement.  The Court nevertheless considers the alternative grounds raised by the parties.

> **2.  Applicability of the Material Reduction in Value Exception**

The "material reduction in value" exception is inapplicable in this matter.  Defendants argue that MPI Coventry's assignment of the Management Agreement to Highland Creek, if allowed, would materially reduce the contract's value because Plaintiff failed to maintain insurance on the Property.  (ECF No. 38 at 12-13.)  On the other hand, Plaintiff submits evidence that it maintained insurance on the Property during the time period at issue.  (ECF Nos. 43-12, 43-13.)  Thus, the Court finds that Defendants' argument is inapposite because Plaintiff did, in fact, maintain property insurance.

> **3.  Applicability of the Executory Contract Exception**

The Court also finds that the Management Agreement could not have been assigned by MPI Coventry to Highland Creek on September 27, 2011, because the Management Agreement was still executory at that time.  Under Georgia law, "an executory

contract is one in which something remains to be done by one or more parties." Ga. Code Ann. § 13-1-2(b). On September 27, 2011, when MPI Coventry and Highland Creek executed the "Quitclaim Assignment and Assumption Agreement," MPI Coventry had ongoing obligations, such as paying for repairs and maintenance to the Property, paying the management fee to Defendants, maintaining an office for Defendants, and maintaining insurance. (Management Agreement ¶¶ 5(b)-(c), 8(c), 9, 11; see ECF No. 43-4.) An email from Bradley Leavitt, the Chief Operating Officer of Carroll Organization, Inc., to Cohen, dated October 4, 2011, also reveals that MPI Coventry had overdue utility bills, for which it was responsible under the terms of the Management Agreement. (ECF No. 38-2 at PageID 526; see Management Agreement ¶¶ 3(f) (giving Manager discretion to make contracts for utilities), 5(b) (holding Owner responsible for payment of all expenses or obligations arising under the terms of the Agreement).)

Thus, because MPI Coventry still had remaining obligations under the Management Agreement on September 27, 2011, the contract was, at that time, executory and could not be assigned except under the terms of the non-assignment provision.[4] See

---

[4] The parties agree that, on September 28, 2011, Defendants terminated the Management Agreement. (See ECF No. 43 at 13.) Because the purported assignment from MPI Coventry to Highland Creek took place before the termination date, the Court declines to consider how the termination of the Management Agreement affected the contract's status as executory.

<u>Singer</u>, 567 S.E.2d at 10. Thus, the "Quitclaim Assignment and Assumption Agreement" between MPI Coventry and Highland Creek did not assign the Management Agreement or the claims arising thereunder to Highland Creek.[5]

### 4. Validity of Absolute Assignment from Highland Creek and Lloyd's to Forest Creek

Because the Management Agreement was a personal services contract and was executory at the time of the purported assignment from MPI Coventry to Highland Creek, Highland Creek had no right in the Management Agreement to assign to Forest Creek. The Court notes, however, that if the Management Agreement were validly assigned from MPI Coventry to Highland Creek, the "Absolute Assignment" would have validly assigned the Management Agreement or the claims arising thereunder from Highland Creek to Forest Creek.

Pursuant to § 48-249-605(c) of the Tennessee Code, "[a]n LLC that has been administratively dissolved continues its existence, but may not carry on any business except that

---

[5] In its Sur-Reply, Plaintiff also argues that the assignments were valid because Hediger unreasonably withheld its consent and failed to object to the assignment of the Management Agreement to Highland Creek and, later, Forest Creek. (ECF No. 35 at 14-16.) There is no evidence in the record, however, that MPI Coventry, Highland Creek, or Forest Creek ever requested Hediger's consent to either assignment. Moreover, despite Plaintiff's contentions, Defendants did not "ratify the assignment by [their] conduct." (ECF No. 35 at 15 (citing <u>Bd. of Trustees of Mich. State Univ. v. Research Corp.</u>, 898 F. Supp. 519, 522 (W.D. Mich. 1995)).) Rather, Defendants' actions in promptly terminating the Management Agreement and attempting to negotiate a new agreement demonstrate that Defendants did not consider Highland Creek or Plaintiff to be a party to the Management Agreement. Accordingly, Plaintiff fails to establish that Hediger breached the non-assignment provision or delayed in objecting to the purported assignments.

necessary to wind up and liquidate its business and affairs
under § 48-249-601 and notify claimants under § 48-249-611."
When an LLC is to be wound up, the general procedure is to (1)
collect all debts owed to the LLC and pay all debts and
obligations of the LLC, (2) sell, lease, transfer, or otherwise
dispose of the assets of the LLC, and then (3) distribute the
remaining asserts to the members.  Tenn. Code Ann. § 48-249-
610(b)-(c).

Although Highland Creek was administratively dissolved, it
was permitted to assign its contract rights in the course of
winding up its business.  As Defendants correctly point out,
Highland Creek was administratively dissolved on August 9, 2012.
(See ECF No. 29-1 at PageID 407.)  Highland Creek filed claims
with the U.S. Bankruptcy Court for the Western District of
Tennessee on January 23, 2013, and December 23, 2013, to collect
on debts owed to the LLC.  (See ECF No. 29-1 at PageID 408-09.)
Approximately five months after the latter claim, and two years
after the administrative dissolution, Highland Creek sought to
dispose of any remaining rights related to the Management
Agreement through the Absolute Assignment.  (ECF No. 43-10.)
Thus, the Court finds that Highland Creek fully complied with
the procedure for winding up set forth in Tennessee Code § 48-
249-610(c) in executing the Absolute Assignment.  Regardless of
Forest Creek or Highland Creek's motives in executing the

Absolute Assignment, the Absolute Assignment was a proper winding up activity. Because Highland Creek was not assigned the Management Agreement or right to sue thereunder by MPI Coventry, however, it could not assign these rights to Forest Creek in the Absolute Assignment.

As discussed above, the Management Agreement was a personal services contract that could not be assigned pursuant to the non-assignment provision and Georgia law. Moreover, at the time that MPI Coventry and Highland Creek executed the Quitclaim Assignment, the Management Agreement was executory and therefore not assignable. Because Highland Creek could not assign to Forest Creek that which it was never validly assigned, Forest Creek was not assigned the right to sue under the Management Agreement. Accordingly, Forest Creek lacks standing to bring a claim for breach of the Management Agreement. Defendants' Motion for Judgment on the Pleadings, converted in part to a motion for summary judgment as to the breach of contract claim, is GRANTED.

### B.    Motion to Amend

In its Order dated January 25, 2016, the Court took under advisement Plaintiff's Motion to Amend as it pertains to the amendment of the breach of contract claim and the addition of Carroll Organization, Inc., and Carroll Management Group, Inc., as defendants. (ECF No. 36.) Because the Court finds that

Plaintiff lacks standing to assert a claim for breach of contract, it follows that Plaintiff's proposed amendments are futile. The addition of more specific factual allegations and a new defendant does not cure Plaintiff's lack of standing. Accordingly, Plaintiff's Motion to Amend is DENIED.

### C. Permissive Joinder

In its supplemental brief, Plaintiff argues that Cohen should be joined as an additional plaintiff pursuant to Rules 17 and 20 of the Federal Rules of Civil Procedure because "the representations that formed the basis of Forest Creek's claim for negligent misrepresentation were made to Barry Cohen" and "Cohen has maintained an ownership in all entities that inspected, purchased and operated the Property." (ECF No. 37 at 3.) Specifically, Plaintiff argues that Cohen has standing in his individual capacity to assert a claim for negligent misrepresentation against Defendants. (Id. at 4.) Defendants argue that this request should be denied because Cohen lacks standing to bring a claim for negligent misrepresentation. (ECF No. 41 at 3.) Defendants maintain that Cohen cannot demonstrate that he suffered any harm as a result of his reliance on the alleged misrepresentation because (1) he never owned the Property in his individual capacity and (2) he was not a member of Highland Creek or Forest Creek during the relevant time period. (Id. at 3-4.)

The Court is not persuaded that Cohen should be joined as an additional plaintiff for two reasons. First, Plaintiff's negligent misrepresentation claim has been dismissed. (See ECF No. 36.) Pursuant to Rule 20, "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20 (a)(1). Because Plaintiff no longer asserts a claim for negligent misrepresentation, its only remaining claim is for breach of contract. But see supra Part III.A (finding that Plaintiff lacks standing to bring a claim for breach of the Management Agreement). A negligent misrepresentation claim by Cohen would not, therefore, arise from the same transaction or occurrence as the breach of contract claim or present a common question of law or fact. Accordingly, joinder of Cohen is not appropriate.

Second, even if Plaintiff's negligent misrepresentation claim had not been dismissed, Defendants are correct that Cohen would lack standing to assert this claim. Because Cohen, in his individual capacity, suffered no harm as a result of the alleged misrepresentation, he could not state a plausible claim of negligent misrepresentation. From the record, it appears that Lloyd's, of which Cohen was president and owner and who loaned

Highland Creek money to purchase the Property after Defendants'
alleged misrepresentations, would be the only entity that could
be permissively joined.  Because Plaintiff has not requested to
join Lloyd's and because the negligent misrepresentation claim
has already been dismissed, joinder of Lloyd's is nevertheless
inappropriate.  Plaintiff's request for permissive joinder is
DENIED.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to
Amend as to the breach of contract claim and the addition of new
defendant Carroll Management Group, LLC d/b/a Carroll
Organization, Inc., and Carroll Management Group, Inc., is
DENIED.  Defendants' Motion for Judgment on the Pleadings,
converted into a motion for summary judgment as to the breach of
contract claim, is GRANTED.  Plaintiff's request to permissively
join Cohen as a plaintiff is also DENIED.

**IT IS SO ORDERED,** this 3rd day of May, 2016.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE